UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED: 4|2|17          │
└─────────────────────────────┘
```

LARRY G. PHILPOT,

        Plaintiff,

-against-

KOS MEDIA LLC,

        Defendant.

16-CV-01523 (AT) (BCM)

**REPORT AND RECOMMENDATION
TO THE HONORABLE ANALISA
TORRES**

## BARBARA MOSES, United States Magistrate Judge.

On December 5, 2016, defendant Kos Media LLC (Kos Media) moved to dismiss this copyright infringement action pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, and Fed. R. Civ. P. 12(b)(5), for insufficient service of process. (Dkt. No. 32.) On January 6, 2017, plaintiff Larry G. Philpot moved for leave to amend his complaint for the purpose of, among other things, addressing the jurisdictional issues identified in defendant's motion to dismiss. (Dkt. No. 35.) Plaintiff did not otherwise respond to the motion. Defendant opposed the motion to amend on January 25, 2017 (Dkt. No. 36), and plaintiff filed a reply memorandum on February 2, 2017. (Dkt. No. 39.) For the reasons that follow I respectfully recommend that the motion to dismiss be GRANTED, mooting the motion to amend. In the alternative, I recommend that the motion to amend be DENIED as futile.

## I.    BACKGROUND

Philpot is a photographer residing in Indianapolis, Indiana. Compl. (Dkt. No. 1) ¶ 19. Kos Media is a limited liability company organized under the laws of Delaware and headquartered in

California. Zuñiga Aff. dated Jan. 25, 2017 (Dkt. No. 36-1), ¶ 4.[1] Kos Media operates a news and commentary website at www.dailykos.com (the Dailykos Website), and maintains an associated Facebook page at www.facebook.com/dailykos (the Dailykos Facebook Page). Compl. ¶¶ 20, 27-28.

Plaintiff filed suit on February 29, 2016, through counsel, alleging that "sometime in late 2014" defendant infringed his registered copyright in a photograph of musician Willie Nelson by publishing the Nelson photograph on the Dailykos Facebook Page, without license, and falsely attributing it to "Daily Kos" rather than to plaintiff. Compl. ¶¶ 27-35. Plaintiff stated that he became aware of the infringement in December 2015, after which he demanded that it be taken down, but the photograph was still on the Dailykos Facebook Page on February 15, 2016, prompting this suit. *Id.* ¶¶ 29-31. Plaintiff sought damages under the Copyright Act, 17 U.S.C. § 504(c). *Id.* ¶¶ 43-50.

On April 15, 2016, plaintiff's attorney, Richard M. Garbarini, moved to withdraw as counsel (Dkt. No. 9), and on May 13, 2016, after a hearing, I granted that motion. (Dkt. No. 19.) Thereafter, plaintiff appeared pro se. On September 23, 2016, noting that Kos Media had neither appeared nor responded to the Complaint, I reminded plaintiff that it was his responsibility "to ensure that service was adequate and to take any further steps necessary to prosecute this action." Order dated Sept. 23, 2016 (Dkt. No. 26), at 1.

On October 26, 2016, the Court received a letter from counsel for Kos Media, dated October 21, 2016 (Dkt. No. 27), advising that defendant had been "alerted to this [sic] existence

---

[1] Plaintiff alleges that Kos Media is "located" in Berkeley, California, *id.*, which is consistent with defendant's filings with the California Secretary of State. *See* California Secretary of State, *Business Search*, https://businesssearch.sos.ca.gov (last visited April 21, 2017). Defendant's Chief Executive Officer attests that as of 2017 Kos Media is headquartered in Oakland, California. *See* Zuñiga Aff., ¶ 5.

of this lawsuit within the past few days via an email," and intended to file a motion to dismiss for lack of jurisdiction. The pending motions followed.[2]

## II. ALLEGATIONS AND EVIDENCE REGARDING PERSONAL JURISDICTION AND SERVICE OF PROCESS

### A. The Complaint

The original Complaint alleges in conclusory terms that personal jurisdiction over Kos Media is proper in this Court because defendant "maintains a headquarters or otherwise resides in New York." Compl. ¶ 8. However, plaintiff presents no supporting factual allegations and acknowledges, in the same document, that defendant is "located" in California. *Id.* ¶ 20. Alternatively, the Complaint alleges that Kos Media is subject to this Court's long-arm jurisdiction because of its "continuous and systematic business activities within New York." *Id.* ¶¶ 9-10. These activities include holding a "Meetup" in New York City on February 28, 2016; publishing a "significant number" of articles on the Dailykos website "directed at" New York; and launching the "NYS Project," aimed at influencing New York politics. *Id.* ¶¶ 10-14.[3]

---

[2] On January 26, 2017, the Honorable Analisa Torres, having previously referred nondispositive matters to the undersigned Magistrate Judge, referred the motion to dismiss for report and recommendation. (Dkt. No. 37.)

[3] As support for these allegations, plaintiff attaches what appear to be printouts of portions of the Dailykos Website, all accessed on February 29, 2016. One printout publicizes the Meetup (which was to have occurred the day before, in the back room of a pub in lower Manhattan). Compl. Ex. C. Another printout displays a story, dated March 30, 2015, announcing an "organizing conference" to be held in April of that year in midtown Manhattan. *Id.* Ex. D. Plaintiff also attaches earlier articles reporting on New York-themed stories such as the death of Mario Cuomo; the "Albany Project," aimed at both state and local politics (the printout contains no mention of any "NYS Project"); and a floating crane brought to New York in 2014 for use in repairing the Tappan Zee Bridge. *Id.*

Plaintiff also alleges that the IP address for the Dailykos Website is located in New York,[4] and that the "vast majority" of its advertising revenue "originates from New York." *Id.* ¶¶ 15-16.[5]

### B.    The Affidavit of Service

On April 6, 2016, plaintiff filed an Affidavit of Compliance (Dkt. No. 8) in which a process server, Steven C. Avery, attests that on March 11, 2016, he served the Summons and Complaint on Kos Media, "a foreign limited liability company," by delivering copies to the New York Secretary of State and tendering the required fee. Avery adds, "Also mailed a notice that the N.Y. Secretary of State was served with the legal documents herein described and tendered the statutory fee." *Id.* The affidavit does not state where, or to whom, the notice was mailed, nor whether additional copies of the summons and complaint were included in that mailing.

### C.    The Zuñiga Affidavit

Defendant's motion to dismiss is supported by the affidavit of Markos Moulitsas Zuñiga, the founder, Chief Executive Officer, and principal owner of Kos Media. Zuñiga Aff. dated Oct. 21, 2016 (Dkt. No. 32-1), ¶ 1. Zuñiga acknowledges that Kos Media owns and operates the Dailykos Website, which has over one million registered users and "over 12 million unique visitors per month." *Id.* ¶ 2. He does not discuss the relationship between Kos Media and the Dailykos Facebook Page on which the allegedly infringing Nelson photograph was posted.

Zuñiga attests that Kos Media is organized under the laws of Delaware and neither owns nor leases any property in New York. Zuñiga Aff. ¶ 5. It has no office, telephone, or fax listings within the state, is not registered with the New York Secretary of State, and "has never conducted business in the State of New York." *Id.* ¶¶ 5-6. According to Zuñiga, the Complaint is

---

[4] As support for this allegation, plaintiff attaches what appears to be a screenshot from a website called "whatmyip.co." Compl. Ex. E.

[5] Plaintiff offers no further detail, and no documentary support, for this allegation.

4

"utterly false" in asserting that the "vast majority" of Kos Media's advertising revenue originates from New York. *Id.* ¶ 9. Zuñiga does not provide any actual figure for Kos Media's New York-generated advertising revenue. He states that defendant "has never advertised itself or marketed itself in any New York publications, nor does it hold any licenses, authorizations, or qualifications, or maintain any ongoing contracts in the State." *Id.* ¶ 11. As for the February 28, 2016 "Meetup," Zuñiga acknowledges that it was organized by "a site employee," but states that it was "a one-time, free, informal gathering," at which "[n]o commerce was transacted." *Id.* ¶ 8.

Zuñiga attests that Philpot first "reached out to me via first-class mail," in a letter dated September 15 and received on October 6, 2015, demanding that Kos Media take down the Nelson photograph and pay a substantial sum of money as a license fee. Zuñiga Aff. ¶ 12 & Ex. A. Zuñiga "removed the image and communicated my doing so to Philpot that same day, October 6, 2015." *Id.* ¶ 13.[6] A year then passed. Zuñiga "did not receive service of or any notice of this complaint being filed until Mr. Philpot emailed it to me on October 7, 2016." *Id.* ¶ 3.

## D. The Proposed First Amended Complaint

As noted above, plaintiff did not file any papers in opposition to the motion to dismiss. He did, however, submit a proposed First Amended Complaint (Dkt. No. 35, at ECF pages 4-34), which omits most of the jurisdiction-related allegations in the original Complaint and replaces them with several new averments. For example, plaintiff no longer alleges that Kos Media is headquartered in New York, nor that it obtains the majority of its advertising revenue from New York. Instead, he asserts that "more than one third (1/3) of the writing staff as listed on the Defendant's masthead live in New York," Prop. First Amend. Compl. ¶ 4, and that these staff

---

[6] If this statement is accurate, some of plaintiff's allegations – including his claim that he first learned of the alleged infringement in December 2015 and that the photograph was still on the Dailykos Facebook Page on February 15, 2016, *see* Compl. ¶¶ 29-31 – are necessarily inaccurate. The pending motion does not require the Court to resolve this dispute.

5

writers, "while maintaining they are headquartered in California, target this district as their Number One (#1) target market based on per capita population." *Id.* ¶ 6.[7]

Plaintiff also proposes to expand his claims against Kos Media, alleging that defendant infringed his registered copyright in two additional photographs – portraying the musicians Tom Petty and Ted Nugent, respectively – by publishing them on unspecified dates, without license or attribution, "on its website." Prop. First Amend. Compl. ¶¶ 17, 26. Plaintiff alleges that defendant's conduct with respect to all three photographs violated both the Copyright Act and the Digital Millennium Copyright Act (DMCA). *Id.* ¶¶ 28-39.

## E.     The Second Zuñiga Affidavit

In its opposition to the motion to amend, Kos Media disputes both of plaintiff's new jurisdictional allegations. In his second affidavit, dated January 25, 2017, Zuñiga attests that "only one member of our fifty-one person staff resides in the Southern District of New York," identifying political director David Nir. Second Zuñiga Aff. ¶ 7. Zuñiga adds that Nir "leads our Daily Kos Elections team" and "had nothing to do with the factual allegations contained in the purported amended complaint." *Id.* According to Zuñiga, the other individuals identified in the printout attached to the proposed First Amended Complaint were not on staff at all (that is, they were volunteers as opposed to employees), were not on staff "at the time of the purported actions

---

[7] As support for this allegation, plaintiff attaches an undated printout from the Dailykos Website containing short biographical sketches of 17 individuals with varying titles, including "editor," "contributing editor," "staff writer," "political director," and "cartoonist." Prop. First Amend. Compl. Ex. E. Seven of the 17 (by the Court's count) are identified as residents of New York, either directly (for example, staff writer Josie Duffy Rice "currently lives in Brooklyn") or by implication (for example, political director David Nir is a "lifelong New Yorker"). Plaintiff does not authenticate the printout and does not explain what portion of the masthead these 17 individuals represent. Nor does he explain which positions he includes as part of the "writing staff," how he calculated that "more than one-third" of the writing staff live in New York, or what defendant did to "target" this District.

6

complained of," or "do not live within the Southern District of New York," though they may reside elsewhere in New York State. *Id.* ¶ 8.[8]

Zuñiga also denies that Kos Media "targets" New York or "any other part of the United States; we are a national political website." Second Zuñiga Aff. ¶ 9. In December 2016, "the site received 174,000 unique visitors from New York City, out of a total of 12.8 million unique visitors. That is, NYC traffic to Daily Kos is just 1.35% of its traffic." *Id.* ¶ 10. Traffic from the "New York Designated Market Area" (DMA), which includes a number of counties in New Jersey and Connecticut, was 6.15% of total site traffic, though the New York DMA constitutes 7.4% of the population of the United States. *Id.* ¶ 11. Zuñiga does not provide traffic statistics for the remainder of New York State.

## F.    Plaintiff's Reply Memorandum

Finally, in plaintiff's February 2, 2017 reply memorandum, submitted in further support of his motion for leave to amend, Philpot claims that the Dailykos Website "lists 43 Staff writers," of which 15 are or were "living in the NY district." Pl. Reply, filed Feb. 2, 2017 (Dkt. No. 39), ¶ 3.[9] Plaintiff also notes that the Dailykos Website offers "clothing, including T-shirts," to its "viewers in New York." *Id.* ¶ 4. He offers no further details concerning defendant's clothing sales, which are not alleged to be restricted (or targeted) to New Yorkers.

---

[8] Zuñiga does not provide any documentary support for these statements (beyond the printout previously submitted by plaintiff), does not list the other individuals on defendant's "fifty-one person staff," and does not explain which of them, beyond Nir, are or were employees as opposed to volunteers.

[9] Plaintiff does not provide any additional documentary support for these statements, does not identify the 43 individuals he classifies as "Staff Writers," and does not identify which 15 (of the 17 included on the printout he previously submitted) he believes to be living "in the NY district."

## III. ANALYSIS

### A. Personal Jurisdiction

#### 1. Burden

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the moving defendant. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). In deciding such a motion, the court "has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). Here, neither party asked for jurisdictional discovery or a hearing; consequently, my recommendation is based upon the motion papers submitted.

The showing that a plaintiff is required to make is a "sliding scale" that "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec.*, 722 F.3d at 84 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Where, as here, the case is in the pre-discovery stage and the court "relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). At this stage, "a court must construe the pleadings and affidavits 'in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor.'" *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 527 (S.D.N.Y. 2014) (Torres, J.) (quoting *Banker v. Esperanza Health Sys., Ltd.*, 201 F. App'x 13, 15 (2d Cir. 2006)).

8

Under this generous standard the court must provisionally credit plaintiff's well-pleaded factual allegations concerning jurisdiction even where those allegations are controverted by defendant's sworn affidavits. *Dorchester Fin. Sec.*, 722 F.3d at 86; *see also Jarolim v. Akris Inc.*, 2015 WL 5821094, at \*3 (S.D.N.Y. Sept. 9, 2015) (Torres, J.) ("[u]ntil an evidentiary hearing is held . . . the plaintiff need make only a prima facie showing that jurisdiction exists, and this remains true notwithstanding a controverting presentation by the moving party") (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985) (citations omitted)). The court need not, however, "draw argumentative inferences in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) and *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). Thus, the plaintiff "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, 2014 WL 5757545, at \*2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini,* 148 F.3d at 185).

In this case, plaintiff has effectively abandoned his original jurisdictional allegations in favor of those in his proposed amended pleading. *See* Pl. Mot. to Amend, filed Jan. 6, 2017 (Dkt. No. 35), at 1 (explaining that the proposed amendments are intended, among other things, to "address Jurisdiction issues"); Pl. Reply, ¶ 3 ("Jurisdiction is listed in the First Amended Complaint"). Thus, although Philpot failed to submit any opposition (denominated as such) to the motion to dismiss, I decline Kos Media's invitation to grant that motion as "unopposed," *see* Def. Mem. in Opp. to Mot. to Amend, filed Jan. 25, 2017 (Dkt. No. 36), at 1. Instead, I will examine the well-pleaded factual allegations contained in the proposed First Amended

Complaint to determine whether Philpot has made a prima facie showing of personal jurisdiction. *See Giusto v. Rose & Womble Realty Co., LLC*, 2016 WL 4544038, at \*5-11 (E.D.N.Y. Aug. 31, 2016) (granting motion to dismiss and denying cross-motion to amend as futile where, "even construed as true," the proposed amended complaint, together with other evidence provided by plaintiff in support of the cross-motion, failed to "satisfy the Plaintiff's prima facie burden to show that this Court may exercise personal jurisdiction over the Defendant").

## 2. Analytical Framework

A personal jurisdiction dispute requires a two-part analysis. The court must first determine whether there is a statutory basis for exercising personal jurisdiction, and then decide "whether the exercise of personal jurisdiction . . . comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014); *see also Wilson*, 27 F. Supp. 3d at 528-31; *Art Assure*, 2014 WL 5757545, at \*2.

In the first part of the analysis, the court "applies the forum state's personal jurisdiction rules," unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *see also Coll. Essay Optimizer, LLC v. Edswell, Inc.*, 2015 WL 5729681, at \*3 (S.D.N.Y. Sept. 30, 2015) ("In litigation arising under a federal statute that does not contain its own jurisdictional provision . . . a federal court sitting in New York has personal jurisdiction over a defendant if (1) New York law confers jurisdiction over that defendant, and (2) the assertion of personal jurisdiction under New York law would comport with due process."); *accord Wilson*, 27 F. Supp. 3d at 527. Neither the

Copyright Act nor the DMCA provides for nationwide service.[10] I therefore turn to New York law for the statutory analysis.

In the second part of the analysis, the court must apply constitutional due process standards. Under the Due Process Clause, a state may "'authorize its courts to exercise personal jurisdiction over an out-of-state defendant'" only if "'the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)) (alteration in original) (internal quotations omitted).

### 3. General Jurisdiction

New York law provides for both general and specific jurisdiction over foreign business entities. The general jurisdiction statute, N.Y. C.P.L.R. § 301, "confers jurisdiction where a company 'has engaged in such a continuous and systematic course of "doing business" in New York that a finding of its "presence" in New York is warranted.'" *Sonera Holding*, 750 F.3d at 224 (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739 (1990)) (internal citations and alterations omitted). "The 'doing business' standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction 'may be sued in New York on causes of action wholly unrelated to acts done in New York.'" *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (quoting *Ball*, 902 F.2d at 198); *see also Sonera Holding*, 750 F.3d at 225.

---

[10] *See, e.g.*, *Reilly v. Plot Commerce*, 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 417 (S.D.N.Y. 2009); *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 357 (S.D.N.Y. 2009).

"Occasional or casual business in New York does not suffice under section 301." *Ball*, 902 F.2d at 198.

Plaintiff does not allege any facts that could support the exercise of general jurisdiction over Kos Media by this Court. He no longer claims that Kos Media maintains a "headquarters" or otherwise "resides" in New York. Nor does he allege the kind of "continuous and systematic course of 'doing business' in New York" that could warrant "a finding of its presence" here. *Sonera Holding*, 750 F.3d at 224 (alterations omitted). Kos Media neither owns nor rents property in New York and is not registered to do business in New York. Second Zuñiga Aff. ¶¶ 5-6. It has no address, telephone number, or fax number in New York, possesses no New York bank account, and has never paid New York taxes. *Id.* ¶ 6. The fact that some of its writers *live* in New York (where they presumably work remotely) does not render their employer subject to general jurisdiction where those writers happen to reside. *See Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 352, 354 (S.D.N.Y. 2014) (nonresident corporation was not subject to general jurisdiction in New York even though it "employs five people in the State, four of whom telecommute from private residences" and its principals "regularly attend and present at conferences in New York"); *Zibiz Corp. v. FCN Tech. Sols.*, 777 F. Supp. 2d 408, 419 (E.D.N.Y. 2011) (holding that the presence of a telecommuting employee who lived in New York did not subject employer to general jurisdiction and noting that "courts in other jurisdictions have consistently found that the mere presence of an employee within the forum state was insufficient to confer general personal jurisdiction over an out-of-state corporate defendant") (collecting cases).

Similarly, it is by now well-settled that the operation of a website accessible to New Yorkers – even a website through which those New Yorkers can buy T-shirts – does not subject

12

the website operator to general jurisdiction under § 301. *See Mejia-Haffner v. Killington, Ltd.*, 119 A.D.3d 912, 913, 990 N.Y.S.2d 561, 563 (2d Dep't 2014) (rejecting contention that "a business's interactive website, accessible in New York, subjects it to suit in this State for all purposes"); *UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 371 (S.D.N.Y. 2012) ("It is well-established that a website accessible to New York residents – even a website with interactive components – is insufficient to support general jurisdiction."); *Allojet PLC v. Vantgage Assocs.*, 2005 WL 612848, at *5 (S.D.N.Y. Mar. 15, 2005) ("while a defendant's use of an interactive website, standing alone, may support a finding of specific jurisdiction, it generally will not confer general jurisdiction over a defendant") (footnotes omitted).

Finally, the allegation that the Dailykos Website has a New York IP address, *see* Compl. ¶ 15, does not suggest that Kos Media itself is engaged in "a continuous and systematic course of doing business in New York." *Sonera Holding*, 750 F.3d at 224. The whatmyip.co printout attached to the Complaint appears to show that in 2015 Kos Media used web hosting services provided by Voxel Dot Net, Inc., which, in turn, used servers located in New York to host the Dailykos Website. *See* Compl. Ex. E.[11] Plaintiff does not allege that Kos Media itself owned or leased the premises in which the servers were located.

"The mere fact that a defendant purchases goods or services from New York does not mean that it is doing business here." *Arbitron Co. v. E.W. Scripps, Inc.*, 559 F. Supp. 400, 403 (S.D.N.Y. 1983) (holding that out-of-state newspaper publisher was not subject to general

---

[11] The printout reflects data was last updated on July 9, 2015. *See* Compl. Ex. E. The same website, queried today, reports that the Dailykos Website is now hosted by Amazon Web Services, using a different range of IP addresses, located in Boardman, Oregon. *See* MYIP.MS, *Whois Web Hosting Information for website – dailykos.com*, http://www.whatmyip.co/info/whois/35.167.82.20/k/2962573706/website/dailykos.com (last visited April 21, 2017.)

13

jurisdiction in New York even though, among other things, it used two New York-based agencies to solicit advertising and purchased computer services from a third New York-based business). Thus, a nonresident defendant's decision to purchase web hosting services from a vendor which used its own New York facilities to provide those services cannot, without more, subject that defendant to general jurisdiction in New York. *See Avila v. Lease Fin. Grp., LLC*, 2012 WL 3165408, at *4 (S.D.N.Y. July 31, 2012) (substantial business contract between nonresident defendant and non-party entity in New York did not subject defendant to general jurisdiction under § 301); *Realuyo v. Villa Abrille*, 2003 WL 21537754, at *4 (S.D.N.Y. July 8, 2003) (nonresident defendant's purchases of goods and services from two non-party businesses with New York offices "fail to establish jurisdiction under CPLR 301") (collecting cases); *Clerc v. Cantoni, Inc.*, 2002 WL 1482769, at *4 (S.D.N.Y. July 10, 2002) (nonresident defendant's purchase of $6.3 million in goods from non-party vendors in New York was insufficient for either general or specific jurisdiction).

Even if the facts alleged by plaintiff satisfied the test set out in § 301, they would not satisfy the Due Process Clause. In *Daimler*, 134 S. Ct. at 760-61, the Supreme Court rejected, as "unacceptably grasping," plaintiffs' contention that a court may constitutionally exercise general jurisdiction "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" Citing *Goodyear*, the Court reaffirmed that the proper inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761 (citing *Goodyear*, 564 U.S. at 919). With respect to a corporation or other

business entity, the "paradigm all-purpose forums for general jurisdiction" are its "place of incorporation and principal place of business." *Daimler*, 134 S. Ct. at 749.

Although the Supreme Court did not wholly foreclose the possibility that a business could be subject to general personal jurisdiction outside of these "paradigm" forums, our Circuit has read *Daimler* to establish that, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (citing *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39-41 (2d Cir. 2014).[12] "[G]eneral jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in that state." *Sonera Holding*, 750 F.3d at 223.

It is, at best, "uncertain if New York's 'doing business' jurisdiction remains viable in light of *Daimler*." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, 2015 WL 5091170, at *3 (S.D.N.Y. Aug. 28, 2015) (citing *Reich v. Lopez*, 38 F. Supp. 3d 436, 454-55 (S.D.N.Y. 2014)); *see also Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 606 (S.D.N.Y. 2016). What is clear is that, in the post-*Daimler* world, a nonresident business entity may not be subjected to the general jurisdiction of a federal court sitting in New York based on the rather meager showing made here. *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (nonresident corporation held not subject to general jurisdiction in New York even though it "has offices in New York, conducts substantial business here, has a registered agent here," and

---

[12] Thus, Lockheed was not "at home" in Connecticut, for general jurisdiction purposes, even though it was registered to do business in that state, leased space in four Connecticut locations, employed 30 to 70 workers at those premises, and generated $160 million in gross revenues from its in-state activities. *Brown*, 814 F. 3d at 622. These contacts, while arguably satisfying the requirements of state law, "fall far short of the relationship that Due Process requires, under *Daimler* and *Goodyear*, to permit the exercise of general jurisdiction over Lockheed." *Id.* at 630.

otherwise engages in a "substantial, continuous, and systematic course of business in New York"). Kos Media's business activities in New York, which are far less "substantial" than these, do not come close to rendering it "at home" in New York for purposes of general jurisdiction.

## 4. Specific Jurisdiction

Plaintiff fares no better under New York's specific jurisdiction statute, which – as relevant here – provides for specific jurisdiction over a non-domiciliary that "transacts any business within the state," so long as the cause of action "aris[es] from" the business transacted within the state. N.Y. C.P.L.R. § 302(a)(1).[13] "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 166 (2006)); *accord Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006); *Fernandez v. DaimlerChrysler, A.G.*, 143 A.D.3d 765, 767, 40 N.Y.S.3d 128, 131 (2d Dep't 2016).

A defendant "transacts business" in New York, for purposes of the long-arm statute, when it "purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 386 (2007) (alteration

---

[13] Section 302(a)(2), which permits a court to exercise specific personal jurisdiction where a defendant "commits a tortious act within the state," does not apply here because, among other things, there is no allegation that Kos Media's personnel copied or uploaded Philpot's photographs in New York, nor that it offered the infringing images for sale in New York. *See Biz2Credit, Inc. v. Kular*, 2015 WL 2445076, at *7 (S.D.N.Y. May 21, 2015); *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 519 (S.D.N.Y. 2014). Section 302(a)(3), which permits a court to exercise specific personal jurisdiction where a defendant "commits a tortious act without the state causing injury to person or property within the state," does not apply because, among other things, the situs of Philpot's injury was Indiana. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 501 (2d Cir. 2011); *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 307, 921 N.Y.S.2d 171, 177 (2011).

16

omitted). Purposeful availment is the "overriding criterion" necessary to establish personal jurisdiction pursuant to § 302(a)(1), and requires more than "random, fortuitous, or attenuated contacts." *Capitol Records,* 611 F. Supp. 2d at 358 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Instead, "[p]urposeful activities are those with which the defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505 (2007) (internal quotation and citations omitted).

A claim "arises from" a particular transaction "when there is 'some articulable nexus between the business transacted and the cause of action sued upon' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Sole Resort,* 450 F.3d at 103 (quoting *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (1981), and *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198 (1988)); *accord Capitol Records*, 611 F. Supp. 2d at 361. "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Sole Resort*, 450 F.3d at 103 (citing *Johnson v. Ward,* 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 35 (2005)).

Because "jurisdiction under section 302(a)(1) requires consideration of whether a cause of action arose out of a party's transaction of business in New York, it is necessary to 'determine the issue of personal jurisdiction separately for each cause of action asserted.'" *Allojet PLC v. Vantgage Assocs.*, 2005 WL 612848, at *4 n.54 (S.D.N.Y. Mar. 15, 2005) (quoting *Cosmetech Int'l LLC v. Der Kwei Enter. & Co.*, 943 F. Supp. 311, 317 (S.D.N.Y. 1996)); *accord Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 294 (E.D.N.Y. 2013) ("A court may not simply conclude that personal jurisdiction over a defendant must exist as to all claims

asserted in a complaint because the 'transacting business' prong of Section 302(a)(1) has been satisfied in the context of a particular claim.").

Here, the sole copyright violation described in the original Complaint occurred when defendant allegedly posted plaintiff's Nelson photograph on the Dailykos Facebook page without proper attribution.[14] Plaintiff makes no claim that the infringing action (that is, the copying and uploading of the image) took place in New York, involved any of defendant's New York-based personnel, or otherwise arose out of any of its activities in New York. Indeed, although Philpot makes various factual allegations concerning the Dailykos Website, he says almost nothing about the Dailykos Facebook Page – except that Kos Media operates it, *see* Compl. ¶ 27; Prop. First Amend. Compl. ¶ 7 – and he offers no facts that would tie it, or its content, to New York. As to plaintiff's claims concerning the Nelson photograph, therefore, he has not made a prima facie showing of specific jurisdiction over defendant Kos Media.

The proposed First Amended Complaint claims that defendant infringed plaintiff's copyright in two additional photographs. While the allegations as to these images are not always crystal clear, Philpot appears to allege that the Petty and Nugent photographs (unlike the Nelson photograph) were published on the Dailykos Website itself. *See* Prop. First Amend. Compl. ¶¶ 17, 26 & Ex. D (showing the Petty and Nugent photographs displayed on archived versions of the Dailykos Website). Once again, however, plaintiff does not assert that defendant copied or uploaded the images in New York, nor that its New York-based personnel took part in the

---

[14] The original Complaint makes it clear that the Nelson photograph was published on the Dailykos Facebook Page. *See* Compl. ¶ 27 & Ex. B. Similarly, although the proposed amended pleading is not always free from ambiguity, plaintiff clearly identifies the Dailykos Facebook Page as the "website that displayed the infringing image," and attaches a copy of the "infringing image" showing the Nelson photograph displayed on the Dailykos Facebook Page. *See* Prop. First Amend. Compl. ¶ 18 & Ex. D.

18

alleged misconduct. Construing the record in the light most favorable to plaintiff, therefore, he avers, as to the Petty and Nugent photographs, that defendant unlawfully published them on a globally-accessible website which is viewable by New Yorkers (among others), enables New Yorkers (among others) to purchase unrelated items such as clothing, and had a New York IP address.

That is not enough.

Where, as here, a plaintiff invokes New York's long-arm statute to sue a nonresident defendant based on its operation of a website, "the jurisdictional inquiry requires considerations particular to that medium." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009). "Because websites are 'generally speaking, equally accessible everywhere,' the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Id.* (quoting *Capitol Records*, 611 F. Supp. 2d at 358); *see also Pearson Educ., Inc. v. Yi Shi*, 525 F.Supp.2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction in New York."). Instead, courts consider where the particular website lies on the "'spectrum' of interactivity." *Royalty Network*, 638 F. Supp. 2d at 418; *see also Coll. Essay Optimizer*, 2015 WL 5729681, at \*4; *Weiss v. Barc, Inc.*, 2013 WL 2355509, at \*4 (S.D.N.Y. May 29, 2013).

"Passive" websites, which merely make information available to viewers, have "been analogized to an advertisement in a nationally-available magazine or newspaper, and [do] not without more justify the exercise of jurisdiction over the defendant." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). Fully "interactive" websites, which are used to purposefully sell goods or services in New York, or charge membership fees to registered

19

users in New York, can be sufficient to trigger jurisdiction under § 302(a)(1) where the cause of action arises out of such purposeful activity. *See, e.g., Mattel, Inc. v. Adventure Apparel*, 2001 WL 286728, at *2-3 (S.D.N.Y. Mar. 22, 2001) (denying motion to dismiss where plaintiff "ordered allegedly infringing merchandise from [defendant] over its web site, using his credit card, and [defendant] shipped that merchandise into New York. This activity not only involved the exchange of payment and shipping information but, moreover, was a commercial transaction that was actually consummated on line."); *see also Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008) (collecting cases).

The Dailykos Website is neither "passive" nor "fully interactive." *See Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2008 WL 1700196, at *6, (S.D.N.Y. Apr. 4, 2008) (collecting cases and characterizing website that allowed users to post on a message board, but from which "no goods can be ordered or purchased," as falling in the "middle ground"). It is primarily a news and opinion website where, according to plaintiff, defendant "posts left-leaning articles" and "opinion pieces intended to shape the public's political beliefs." Prop. First Amend. Compl. ¶¶ 6-7. The website "charges for advertising," *id.* ¶ 6, but does not require viewers to register or pay a membership fee in order to access its articles and other content. Subscriptions are available for viewers who prefer an "ad-free site experience." *See* http://www.dailykos.com/terms (last visited April 21, 2017). Like most news and opinion sites, the Dailykos Website permits readers to forward, share, and comment on articles. While it is possible to purchase a T-shirt through the site, merchandise sales do not appear to be a substantial part of its business, and there is no allegation that defendant ever sold or attempted to sell copies of any of plaintiff's photographs.[15]

_____

[15] As of the date of this Report and Recommendation, the Dailykos Website offered seven items for sale: five T-shirt styles, a "Resist Pin & Button Pack," and a water bottle with the Daily Kos logo. *See Clothing & Accessories*, Daily Kos, https://dailykos.merchtable.com (last visited April 21, 2017).

According to plaintiff, the infringing images were used for the purpose of "driving traffic to [defendant's] respective websites." Prop. First Amend. Compl. ¶¶ 12, 18, 26.[16]

The Court need not decide whether the activity described above could, in another case, be sufficient under § 302(a)(1). It is not sufficient in this case. First, while Daily Kos may be capable of conducting web-based business transactions with New Yorkers – for example, selling them subscriptions or T-shirts – plaintiff provides no evidence, or even an allegation, "that any New York resident actually engaged in any such transactions." *Royalty Network*, 638 F. Supp. 2d at 420. "[T]hat failure is fatal." *Id.* (dismissing copyright infringement case for lack of personal jurisdiction, prior to any jurisdictional discovery, where plaintiff alleged that New Yorkers could register with and download files from Indian music website but failed to demonstrate that any New Yorkers actually did so or even that defendants "did anything" to "purposely" target New Yorkers "for business"). "It stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website . . . without some evidence or allegation that commercial activity in that state actually occurred or was actively sought." *Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500896, at *7 (S.D.N.Y. June 23, 2005); *accord Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 498 (S.D.N.Y. 2016); *Scottevest, Inc. v. AyeGear Glasgow Ltd.*, 2012 WL 1372166, at *4 (S.D.N.Y. Apr. 17, 2012); *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87-88 (E.D.N.Y. 2006).[17]

---

[16] It is not clear what other websites plaintiff intends to reference.

[17] Plaintiff's conclusory allegation that Kos Media "target[s] this district as their Number One (#1) target market based on per capita population," Prop. First. Amend. Compl. ¶ 6, does not require any different analysis. Plaintiff does not explain what, if anything, defendant did to "target" New York. Nor does he allege any facts that would distinguish Kos Media from any other national media company for which New York City can be expected to be an important market simply by virtue of its large population. *See Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 203 (E.D.N.Y. 2014) (court could not exercise specific jurisdiction over nonresident defendant who published Orthodox Jewish-themed website, even though a "large

21

Second, there is no "articulable nexis," *McGowan,* 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, between this litigation and the "interactive" business transactions that could be conducted through the Dailykos Website. Plaintiff does not allege that defendant put copies of his photographs on the T-shirts offered for sale, nor that it charged subscription fees to view those images. The photographs were simply posted to defendant's publicly-available website, where they were equally accessible to viewers anywhere in the world. Even under the "reasonable assumption" that some New Yorkers viewed them on the Dailykos Website, *see Capitol Records,* 611 F. Supp. 2d at 359-60, "such [images] were available free of charge and irrespective of the viewer's locale and thus insufficient to constitute 'transaction of business' in New York." *Id.* at 360; *see also Megna,* 166 F. Supp. 3d at 499 (dismissing copyright infringement case for lack of personal jurisdiction where "[t]he Complaint does not contain any allegations that specifically connect the use of [plaintiff's] photograph with Biocomp's business activity").

By the same token, the use of New York servers by defendant's web hosting vendor is "merely coincidental," *Sole Resort,* 450 F.3d at 103, and "of no relevance to the facts or legal issues underlying this suit," which concern the content of the website, not its architecture. *Royalty Network,* 638 F. Supp. 2d at 422 (holding that registration of defendants' website domain name in New York was insufficient to subject defendants to specific jurisdiction under § 302(a)(1) in copyright suit arising out of allegedly infringing content made available through

---

fraction of the global Jewish population . . . lives in New York" and one-third of defendant's front-page articles, including the article underlying the lawsuit, "concerned Jewish communities in New York"); *Royalty Network,* 638 F. Supp. 2d at 420 (court could not exercise specific jurisdiction over nonresident defendant that operated website offering Indian music and movies even though "New York is home to a legally significant percentage of individuals of Indian descent residing in the United States").

the website).[18] Even if the use of New York servers constituted a sufficient "transaction of business" under state law, the assertion of specific jurisdiction over Kos Media based on these facts would be prohibited by the Due Process Clause. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (foreign corporation providing helicopter transportation services could not be sued in Texas on claims arising out of helicopter accident in Peru even though corporation purchased approximately 80% of its helicopter fleet in Texas, and its managers, maintenance personnel and pilots travelled to Texas for training and technical consultation).

After construing the record in the light most favorable to plaintiff Philpot, I conclude that his well-pleaded factual allegations do not permit this Court to exercise either general or specific personal jurisdiction over defendant Kos Media. Since plaintiff has not made the necessary prima facie showing, I respectfully recommend that the District Judge grant defendant's Rule 12(b)(2) motion and dismiss this action without prejudice to refiling elsewhere.

## B. Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v.*

---

[18] In cases involving the unlawful *downloading* of copyrighted motion pictures or other content, IP address data has been accepted by a number of courts to demonstrate the probable physical location of the individual doing the downloading – and hence to establish specific personal jurisdiction over that individual pursuant to § 302(a)(2). *See, e.g.*, *Malibu Media, LLC v. Doe*, 2016 WL 4574677, at *4 (E.D.N.Y. Sept. 1, 2016) (distributor of erotic films, seeking expedited discovery to learn identity of "Doe" defendant responsible for unlawful downloading, made a prima facie showing of personal jurisdiction over that defendant by alleging that he or she "used an IP address located in this district to download and distribute its copyrighted material"); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 n.3 (S.D.N.Y. 2012) (plaintiff's factual assertion "as to the location of the Doe defendants" when they allegedly downloaded "My Little Panties #2" without paying for it "is critical for establishing that personal jurisdiction is proper in this Court"). In the case at bar, however, the IP addresses associated with the Dailykos Website say nothing about where Kos Media committed the "tortious acts" alleged by plaintiff.

*Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1353 (3d ed. 2004) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). If there is no basis for this Court to exercise personal jurisdiction over Kos Media, adequate service of process cannot remedy the deficiency. *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) ("'there must be a statutory basis for personal jurisdiction that renders . . . service of process effective'") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012)). Nonetheless, for avoidance of doubt, I separately consider whether plaintiff has adequately served defendant in compliance with Fed. R. Civ. P. 4, which, as relevant here, permits service on a nonresident business entity by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Pursuant to Rule 4(m), such service must be effected within 90 days after the complaint is filed, unless the court authorizes later service.

Plaintiff claims to have served defendant pursuant to N.Y. Ltd. Liab. Co. Law § 304, which governs service of process on a foreign limited liability company (LLC) that is not authorized to do business in New York. *See* Aff. of Compl. at 1. Pursuant to § 304, service of process "shall first be made by personal delivery" to the New York secretary of state. *Elzofri v. Am. Express Co.*, 29 Misc. 3d 898, 899, 907 N.Y.S.2d 644, 646 (Sup. Ct. Albany Co. 2010) (citing N.Y. Ltd. Liab. Co. Law § 304(b)). Such service is not "sufficient," however, unless "notice thereof and a copy of the process" are either (1) "delivered personally outside this state" to the foreign LLC, to a person and in the manner authorized by the law of the jurisdiction where service is made, or (2) sent to the foreign LLC "by registered mail, return receipt requested," at

24

the address specified for service on file with the department of state (or comparable body) "in the jurisdiction of its formation." N.Y. Ltd. Liab. Co. Law § 304(c); *see also Elzofri*, 29 Misc. 3d at 899, 907 N.Y.S.2d at 646 (outlining alternative requirements). Finally, proof of service must be made by affidavit of compliance, "together with the process, filed with the court within thirty days" after personal service on the LLC is made or after the signed return receipt is received. N.Y. Ltd. Liab. Co. Law §§ 304(d), (e).[19] Service is complete ten days after the affidavit of compliance, together with the requisite documentation, is filed with the clerk of court. *Id.* "[S]trict compliance" with these procedures, including those "pertaining to the filing of an affidavit of compliance, is required to validly effect service of process" on an unauthorized foreign LLC. *Elzofri*, 29 Misc. 3d at 900, 907 N.Y.S.2d at 646-47 (citing *Flick v. Stewart-Warner Corp.*, 76 N.Y.2d 50, 556 N.Y.S. 2d 510 (1990)) (finding that the principles set forth in *Flick* with respect to N.Y. Bus. Corp. Law § 307 also apply to N.Y. Ltd. Liab. Co. Law § 304 given that the "statutes are substantively identical, and each governs foreign business entities that are not authorized to do business" in New York).

When a Rule 12(b)(5) motion is made, the plaintiff bears the burden of proving adequate service. *Vantone Grp. LLC v. Yangpu Ngt Indus. Co.*, 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016); *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002); *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). In considering a motion to dismiss pursuant to Rule 12(b)(5), a court must "consider[] the parties' pleadings and affidavits in the light most favorable to the non-moving party." *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 84 (S.D.N.Y. 1999). It must also look at "matters outside the complaint" to determine whether service was adequate. *Darden*, 191 F. Supp. 2d at 387.

---

[19] If the LLC refused to accept delivery or sign the return receipt, plaintiff must file "the original envelope with a notation by the postal authorities that acceptance was refused." *Id.* § 304(e).

Here, plaintiff has failed to demonstrate compliance with New York law. His Affidavit of Compliance attests only that service was made on the New York Secretary of State, that notice thereof was "mailed" to an unspecified address, on an unspecified date, and that a return receipt, which was not filed, was "returned signed but undecipherable." (Dkt. No. 8.) The affidavit does not state whether copies of the process served on the Secretary of State were delivered to Kos Media, together with notice of such service, as required by N.Y. Ltd. Liab. Law § 304(c), or whether the notice of service that was "mailed" was mailed by "registered mail, return receipt requested, at the post office address specified [by Kos Media] for the purpose of mailing process, on file in the department of state . . . in the jurisdiction of its formation," as required by N.Y. Ltd. Liab. Law § 304(c)(2). Indeed, the affidavit does not even specify to whom, or what, the notice was mailed. Further, plaintiff never filed a signed return receipt "or other official proof of delivery," or refusal of acceptance, as required by N.Y. Ltd. Liab. Law § 304(e). The statute is clear that service of process is not completed until ten days after documentation that complies with the statutory requirements is filed with the clerk of court. *See id.* Plaintiff never filed such documentation, and has made no attempt to cure the deficiencies outlined above in the months since defendant filed its motion to dismiss. Consequently, the Court concludes that service of process on Kos Media has never been effected.

After construing the record in the light most favorable to plaintiff Philpot, I conclude that he has not demonstrated adequate, or indeed any, service of process upon defendant Kos Media. Since plaintiff has not requested additional time within which to serve defendant – and since, as discussed above, adequate service would not cure the underlying jurisdictional defect – I respectfully recommend that the District Judge grant defendant's Rule 12(b)(5) motion as well.

26

## C. Motion to Amend

Plaintiff sought leave to amend for the express purpose of "address[ing] Jurisdiction issues." Pl. Mot. to Amend at 1; *see also* Pl. Reply Mem. at 2 ("Jurisdiction is listed in the First Amended Complaint"). For the reasons set forth in part III.A of this Report and Recommendation, I have concluded that the well-pleaded allegations set forth in the proposed First Amended Complaint "would not cure the court's lack of personal jurisdiction" over Kos Media, making the amendment futile. *See Swift Transp. Co. of Ariz., LLC v. RTL Enters., LLC*, 2015 WL 457641, at *5 (N.D.N.Y. Feb. 3, 2015) (denying cross-motion to amend where proposed amendments would not overcome jurisdictional defects); *accord Madison Capital Mkts. v. Starneth Europe B.V.*, 2016 WL 4484251, at *16 (S.D.N.Y. Aug. 23, 2016) (denying leave to amend where "proposed Amended Complaint does not cure all of the jurisdictional and pleading defects . . . each of which independently mandate dismissal"). To the extent the motion to amend is not moot, therefore, I respectfully recommend that the District Judge deny it.

## IV. CONCLUSION

Plaintiff has failed to show that this Court may exercise personal jurisdiction over defendant Kos Media under New York law or the Due Process Clause. He has also failed to demonstrate timely – or any – service of process on defendant. Further, his proposed amended pleading would not cure the jurisdictional defects discussed above. I therefore respectfully recommend that the District Judge GRANT defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5) and DENY plaintiff's motion for leave to amend.

The Clerk of the court is respectfully directed to mail a copy of this Report and Recommendation to the plaintiff.

Dated: New York, New York
April 2 1, 2017

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Analisa Torres at Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Torres. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).